UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

CARRIE WATSON,

    Plaintiff,                                    Case No. 04-70491

v.                                                   Hon. Gerald E. Rosen

LOWE'S HOME CENTERS, INC.,

    Defendant.
_____/

**OPINION AND ORDER GRANTING
DEFENDANT'S MOTION FOR SUMMARY JUDGMENT**

        At a session of said Court, held in
the U.S. Courthouse, Detroit, Michigan
on      March 19, 2009

    PRESENT: Honorable Gerald E. Rosen
                      Chief Judge, United States District Court

## I.  INTRODUCTION

In this case, Plaintiff Carrie Watson has asserted state-law claims of retaliation and sex discrimination against her former employer, Defendant Lowe's Home Centers, Inc., alleging that her discharge in May of 2003 was attributable either to (i) her complaint to a supervisor about her co-worker's sexual harassment of her, or (ii) her gender.[1] Defendant's removal of this case to this Court rests upon the parties' diverse citizenship.

---

[1] Plaintiff's complaint also includes a state-law claim of sexual harassment, but this claim was dismissed by stipulated order dated July 25, 2005.

Through the present motion, Defendant seeks an award of summary judgment in its favor on each of Plaintiff's two remaining state-law claims.  In support of this motion, Defendant argues that Plaintiff has failed to establish a *prima facie* case of either retaliation or sex discrimination.  Alternatively, even if Plaintiff has established a *prima facie* case, Defendant contends that it has identified a legitimate reason for Plaintiff's discharge — namely, continuing attendance problems after she had previously been warned that such problems could lead to her termination — and that Plaintiff has failed to show that this stated reason was a pretext for retaliation or sex discrimination.

Defendant's motion has been fully briefed by the parties.[2]  Having reviewed the parties' briefs and accompanying exhibits, as well as the record as a whole, the Court finds that the relevant allegations, facts, and legal arguments are adequately presented in these written submissions, and that oral argument would not aid the decisional process.  Accordingly, the Court will decide Defendant's motion "on the briefs."  *See* Local Rule 7.1(e)(2), U.S. District Court, Eastern District of Michigan.  For the reasons set forth below, the Court finds that this motion should be granted.

---

[2]On two occasions — shortly after the case was removed to this Court, and then again after the parties had completed their briefing on Defendant's summary judgment motion — this action was stayed in light of Plaintiff's filing for bankruptcy protection.  The bankruptcy court subsequently authorized Plaintiff to continue prosecuting her claims in this case, and this Court therefore has restored the case to its active docket.

## II. FACTUAL BACKGROUND

In April of 2002, Plaintiff Carrie Watson was hired by Defendant Lowe's Home Centers, Inc. to work as a sales specialist in the flooring department of Defendant's home improvement store in Southgate, Michigan. At the time of her hiring, this department's supervisor, Tamara Shird, was on extended medical leave, from which she returned in October of 2002.

During the initial period of Plaintiff's employment, before Shird returned from her leave, Plaintiff was subjected to mistreatment by two co-workers, Rick Phelps and Dave Wynn. According to Plaintiff's deposition testimony, these two individuals "ganged up on" her, "pick[ed] on" her, and "belittled" her, through such actions as "pag[ing] [her] constantly" over the store's public address system. (Plaintiff's Dep. at 48-49.) In addition, Plaintiff testified that these two co-workers "talked a lot about equal rights, women's lib," opining that "a woman should have to do exactly what the man is expected to do," with the result that she was given heavy-lifting tasks to perform that she could not accomplish as quickly as her male counterparts. (*Id.* at 50-53.) Plaintiff further testified that she had heard from co-workers that Rick Phelps was "talking behind [her] back" and "degrad[ing] [her] to no end." (*Id.* at 54.)[3]

---

[3]As Defendant notes, Plaintiff's interrogatory answers during discovery omitted any mention of this purported mistreatment by Phelps and Wynn. Rather, when asked to identify the factual basis for her allegations of sexual harassment in her complaint, Plaintiff cited Phelps as the sole perpetrator, and she referred solely to a separate incident (discussed below) in which Phelps purportedly "requested that Plaintiff sit on [his] lap" and "asked Plaintiff out on a date." (Defendant's Motion, Ex. 13, Plaintiff's Interrogatory Answers at 6.)

Plaintiff testified that she went to the store manager, Jim Geers, on three consecutive days to complain about the actions of co-workers Phelps and Wynn.  (*See id.* at 47.)[4]  At one of these meetings, Plaintiff told Geers that it "seemed like there was discrimination, [since she] was a woman and [she] was belittled," and she observed that she "was the only woman in the department" at the time.  (*Id.* at 49.)  Although Plaintiff indicated at the first of these meetings that she would try to handle the problem by speaking to her co-workers, she reported at the third meeting that this attempt had been unsuccessful, and she told Geers that "someone needed to talk to them . . . and get it straightened out because it was getting to the point where [she] didn't want to come to work."  (*Id.* at 59.)[5]

According to Plaintiff, Geers did not take action on these complaints of workplace harassment.  To the contrary, just two weeks after Plaintiff complained, Geers promoted

---

[4] Again, Plaintiff's testimony on this point is inconsistent with her interrogatory answers.  Specifically, she was asked in one of Defendant's interrogatories to identify the factual basis for the allegations in her complaint that she had complained to her supervisor about co-worker sexual harassment.  In response, she identified only her "oral[] complain[t] on February 1, 2003 to Tamara Shird and Jim Ge[e]rs." (Defendant's Motion, Ex. 13, Plaintiff's Interrogatory Answers at 6-7.)  Yet, Plaintiff conceded at her deposition (i) that her complaint on or around February 1, 2003 was made only to Shird, and not Geers, (ii) that this complaint concerned the above-cited incident in which Phelps purportedly requested that she sit on his lap, and (iii) that her complaints to Geers were made at some other (and apparently earlier) point in time.  (*See* Plaintiff's Dep. at 102-03.)

[5] Plaintiff was unable to say when she made these complaints to Geers.  It seems evident, however, that these meetings must have occurred no later than mid-September of 2002, because they preceded Phelps's temporary promotion to department manager (discussed below), a position he held when he issued a written reprimand to Plaintiff on September 23, 2002.  (*See* Plaintiff's Response, Ex. 3.)

one of the offending co-workers, Rick Phelps, to serve as acting manager of the flooring department — and, thus, as Plaintiff's direct supervisor. (*See* Plaintiff's Dep. at 103.) Soon after this promotion, on September 23, 2002, Phelps issued a written reprimand to Plaintiff, contending that her work lists had not been completed in a timely manner or, in some instances, at all. (*See* Plaintiff's Response, Ex. 3.)

At some point in October of 2002, Tamara Shird returned from her medical leave and resumed her position as manager of the flooring department, with Phelps then returning to his position as Plaintiff's co-worker in this department. At around this same time, on October 22, 2002, Defendant issued a written reprimand to Plaintiff for excessive tardiness and absenteeism in violation of the company's attendance policy. (*See* Defendant's Motion, Ex. 7.)[6] Specifically, Plaintiff was cited for being late twelve times and for two unexcused absences, and she was warned that "any further instances will result in disciplinary action . . . up to [and] including termination." (*Id.*)[7]

Following this written reprimand, Plaintiff's attendance problems evidently abated

---

[6] It is not clear whether Shird had resumed her position as Plaintiff's supervisor when this reprimand was issued. No direct supervisor's name is listed in the report of this reprimand, and it appears that this report was prepared by the assistant store manager (and Shird's supervisor), Tim Nemeth. (*See id.*)

[7] Just a short time later, however, Shird issued a November 5, 2002 written commendation for Plaintiff's good job performance, stating that she had "gone above and beyond by completely re-doing the signage in the ceramics aisle" of the store. (Plaintiff's Response, Ex. 4.) Both assistant store manager Nemeth and store manager Geers approved this written commendation, with Nemeth adding a note thanking Plaintiff for her work. (*Id.*)

for a time[8] but then resumed, with company records indicating that she was absent from or late to work sixteen times between February 7 and May 16, 2003.  (*See* Defendant's Motion, Ex. 10.)[9]  Plaintiff's employment was terminated on May 20, 2003, with the notice of termination citing Plaintiff's continuing and "numerous" violations of Defendant's attendance policy since she was last given notice of this problem in October of 2002.  (*See* Defendant's Motion, Ex. 11, 5/20/2003 Termination Notice.)  Plaintiff testified at her deposition that she was informed of this decision by store manager Jim Geers.  (*See* Plaintiff's Dep. at 43.)[10]  This lawsuit followed.

### III.  ANALYSIS

**A.     The Standards Governing Defendant's Motion**

Through the present motion, Defendant seeks summary judgment in its favor on each of Plaintiff's two remaining state-law claims.  Under the pertinent Federal Rule,

---

[8]Plaintiff's annual performance review in February of 2003, for example, included a note that "her attendance has been an issue" but that it "lately has improved."  (Defendant's Motion, Ex. 9, 2003 Performance Review at 2.)

[9]Plaintiff acknowledged at her deposition that she had no basis for disputing the accuracy of Defendant's records on this point.  (*See* Plaintiff's Dep. at 46.)

[10]Plaintiff further testified that immediately before she was informed of her termination on Tuesday, May 20, 2003, she spoke to a district manager the previous Friday and told him "that there was definitely a problem in the store as far as discrimination," and also complained that a request for time off had been denied "at the last minute." (*Id.* at 38-39.)  According to Plaintiff, this district manager — whose name she could not recall — responded by advising her that store manager Geers would speak to her on Monday about these matters.  (*Id.* at 39.)  Instead, Geers informed her on Tuesday, May 20, 2003 that her employment had been terminated.  As Defendant points out, Plaintiff fails to allege in her complaint that she made any such report of discrimination to a district manager, and instead cites only a February 1, 2003 complaint to her supervisor as the basis for her claim of retaliatory discharge.  (*See* Complaint at ¶ 16.)

summary judgment is proper "if the pleadings, the discovery and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). As the Supreme Court has explained, "the plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." *Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S. Ct. 2548, 2552 (1986).

In deciding a motion brought under Rule 56, the Court must view the evidence in a light most favorable to the nonmoving party. *Pack v. Damon Corp.,* 434 F.3d 810, 813 (6th Cir. 2006). Yet, the nonmoving party "may not rely merely on allegations or denials in its own pleading," but "must — by affidavits or as otherwise provided in [Rule 56] — set out specific facts showing a genuine issue for trial." Fed. R. Civ. P. 56(e)(2). Moreover, any supporting or opposing affidavits "must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant is competent to testify on the matters stated." Fed. R. Civ. P. 56(e)(1). Finally, "the mere existence of a scintilla of evidence that supports the nonmoving party's claims is insufficient to defeat summary judgment." *Pack,* 434 F.3d at 814 (alteration, internal quotation marks, and citation omitted).

**B.     Plaintiff Has Failed to Establish a *Prima Facie* Case of Gender**

**Discrimination, Nor Has She Produced Evidence that Defendant's Stated Basis for Her Discharge Was a Pretext for Unlawful Discrimination.**

In count IV of her complaint, Plaintiff asserts a wrongful discharge claim under Michigan's Elliott-Larsen Civil Rights Act (the "Elliott-Larsen Act"), Mich. Comp. Laws § 37.2101 *et seq.,* alleging that her "gender was a significant and motivating factor in [Defendant's] decision to discharge her." (Complaint at ¶ 22.) In seeking summary judgment in its favor on this claim, Defendant argues that Plaintiff has failed to establish one or more elements of a *prima facie* case of gender discrimination. In addition, Defendant contends that Plaintiff has failed to show that Defendant's stated reason for her discharge — namely, her attendance problems — was a pretext for discrimination. The Court agrees on both scores.

In the absence of direct evidence of gender discrimination,[11] Plaintiff must rely on circumstantial evidence to create an inference of discrimination. This method of proof is governed by the familiar burden-shifting approach adopted by the Supreme Court in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792, 802, 93 S. Ct. 1817, 1824 (1973). Under the first prong of this tripartite approach, Plaintiff must establish a *prima facie* case consisting of four elements: (i) that Plaintiff was a member of a protected class; (ii) that she was qualified for her position; (iii) that she suffered an adverse employment action; and (iv) that she was replaced by a person outside the protected class or was treated less

---

[11]Plaintiff contends that she has produced such direct evidence here. This question is addressed below.

favorably than a similarly situated individual outside the protected class. *See Town v. Michigan Bell Telephone Co.,* 455 Mich. 688, 568 N.W.2d 64, 68 (1997). There is no dispute here as to Plaintiff's membership in a protected class, or that her discharge qualifies as an adverse action.[12]

Nonetheless, Defendant contends that Plaintiff has failed to establish the fourth and final prong of a *prima facie* case of discrimination — namely, that she was treated less favorably than a similarly situated male co-worker despite comparable attendance problems. To the contrary, Defendant has produced evidence that a male co-worker in the flooring department, Rob Silas, was issued a written reprimand (on July 10, 2002) and then terminated (on January 20, 2003) for attendance problems comparable to those exhibited by Plaintiff. (*See* Defendant's Motion, Ex. 14.) Plaintiff has not even addressed the termination of co-worker Silas in her response to Defendant's motion, much less endeavored to show that she and Silas were not similarly situated or that she was treated less favorably than he was. Nor has Plaintiff otherwise identified any similarly situated male co-worker who was treated more favorably than her under comparable circumstances. Accordingly, the Court finds that Plaintiff has failed to establish this element of a *prima facie* case of gender discrimination.[13]

---

[12] As discussed below, Plaintiff has identified another candidate for an "adverse action" apart from her discharge.

[13] In light of this conclusion, the Court need not address Defendant's contention that Plaintiff was not "qualified" for her position because of her attendance problems and her most recent performance evaluation, which indicated that she was only "partially" achieving her employer's expectations.

In an effort to avoid this result, Plaintiff seeks to identify another adverse employment action she suffered, apart from her discharge, and she suggests that this additional adverse action provides a basis for establishing a *prima facie* case of gender discrimination. Specifically, she points to the September 23, 2002 written reprimand that was issued to her during the brief period when Rick Phelps was the acting manager of the flooring department. If this is viewed as the relevant "adverse action," Plaintiff suggests that there is an evidentiary basis for the conclusion that similarly situated male co-workers were treated differently, and that Phelps directed his harassment and disciplinary measures uniquely at women.

Yet, apart from the fact that Plaintiff's claim of gender discrimination in her complaint rests solely upon her discharge, with no other adverse action identified in this pleading, the Court readily concludes that the September 23, 2002 written reprimand does not qualify as an "adverse action." The Michigan courts have explained that "in order for an employment action to be adverse for purposes of a discrimination action, (1) the action must be materially adverse in that it is more than mere inconvenience or an alteration of job responsibilities, and (2) there must be some objective basis for demonstrating that the change is adverse." *Wilcoxon v. Minnesota Mining & Manufacturing Co.,* 235 Mich. App. 347, 597 N.W.2d 250, 258 (1999) (internal quotation marks and citations omitted). "Although there is no exhaustive list of adverse employment actions, typically it takes the form of an ultimate employment decision, such as a termination in employment, a demotion evidenced by a decrease in wage or salary, a less distinguished title, a material

loss of benefits, significantly diminished material responsibilities, or other indices that might be unique to a particular situation." *Pena v. Ingham County Road Commission,* 255 Mich. App. 299, 660 N.W.2d 351, 358 (2003) (internal quotation marks and citations omitted).

Plaintiff has made no effort to show that the September 23, 2002 written reprimand, standing alone, qualifies as an "adverse action" under this standard. In a number of cases, including at least two unpublished Sixth Circuit decisions, the courts have found that letters of reprimand or other written warnings are adverse employment actions only if they bring about some sort of material negative change in the terms and conditions of employment. *See Jones v. Butler Metropolitan Housing Authority,* No. 01-3292, 40 F. App'x 131, 137 (6th Cir. July 2, 2002) ("Unless the letter [of reprimand issued to the plaintiff] accompanied some other action, such as a demotion or salary reduction, it is not an adverse employment action."); *Reid v. Madison County,* No. 98-5312, 1999 WL 196560, at * 2 (6th Cir. Apr. 1, 1999); *see also Haynes v. Level 3 Communications, LLC,* 456 F.3d 1215, 1224-25 (10th Cir. 2006); *Whittaker v. Northern Illinois University,* 424 F.3d 640, (7th Cir. 2005); *Wedyke v. Potter,* No. 06-14874, 2008 WL 2705501, at *7 (E.D. Mich. July 10, 2008).[14] In this case, Plaintiff has not even attempted to identify any tangible adverse consequences that flowed directly from the

---

[14]Although the claims in the present case arise solely under Michigan law, the Michigan courts have looked to federal case law in analyzing the "adverse action" and other elements of a *prima facie* case of discrimination under the Elliott-Larsen Act. *See, e.g., Pena,* 660 N.W.2d at 358-59; *Wilcoxon,* 597 N.W.2d at 258-59.

September 23, 2002 written reprimand.

Nonetheless, Plaintiff evidently contends that this reprimand rises to the level of an adverse action in light of the role it purportedly played in Defendant's subsequent decision to discharge her. *See, e.g., Haynes,* 456 F.3d at 1224-25 (suggesting that a written reprimand might qualify as an adverse employment action if "the effect on the plaintiff's employment status was an immediate placement in an at-risk status"). In particular, Plaintiff asserts (i) that the notice of her termination purportedly states that it was based in part on the September 23, 2002 reprimand, and (ii) that the store manager, Jim Geers, purportedly "testified that the . . . discipline [imposed by Phelps] was a factor in the decision to terminate [her] employment." (Plaintiff's Response Br. at 9, 11.)

There is no evidence to support either of these assertions. First, the notice of Plaintiff's termination does not provide any support for the proposition that the September 23, 2002 reprimand contributed to Defendant's discharge decision. To the contrary, this notice cites only Plaintiff's repeated violations of Defendant's attendance policy as the ground for her termination. (*See* Defendant's Motion, Ex. 11.) While the notice lists the September 23, 2002 reprimand among the three "performance reports" issued to Plaintiff "within the last 12 months," (*id.*), this bare mention does not indicate that this reprimand contributed in any way to Defendant's decision to discharge Plaintiff, and Plaintiff has not produced any evidence of such a connection.[15] Similarly, store

---

[15]Indeed, while the notice of Plaintiff's termination list three performance reports within the preceding 12 months, this evidently is not a threshold requirement for termination, as the

manager Geers did *not* testify that the September 23, 2002 reprimand played a role in Defendant's discharge decision, but instead merely affirmed that this reprimand was listed on the notice of termination. (*See* Plaintiff's Response, Ex. 6, Geers Dep. at 23.) Immediately prior to this testimony, Plaintiff's counsel asked Geers whether there was "anything else that led to [Plaintiff's] termination other than attendance," and Geers responded, "No. That was the cause for dismissal." (*Id.*)

Accordingly, there is no basis in the record for treating the September 23, 2002 reprimand as an "adverse action" that could support Plaintiff's claim of gender discrimination. Neither is there any evidentiary basis for concluding that Phelps brought his purported gender bias to bear in Defendant's decision in May of 2003 to terminate Plaintiff's employment. Nothing in the record suggests that Phelps was involved in any way in this decision-making process, and Plaintiff does not contend otherwise. Because the September 23, 2002 reprimand, standing alone, does not qualify as an "adverse action," and because Plaintiff has failed to produce evidence that this reprimand played a role or contributed in any way to the adverse action identified in her complaint (her discharge), this reprimand is of no assistance to Plaintiff in her effort to establish a *prima facie* case of gender discrimination.[16]

---

notice of the termination of Plaintiff's co-worker, Rob Silas, discloses that he had been issued only two such performance reports over the preceding 12 months. (*See* Defendant's Motion, Ex. 14.) Presumably, then, the September 23, 2002 reprimand was in no way necessary to support the decision to terminate Plaintiff's employment, and she has not shown (or argued) otherwise.

[16]Plaintiff's effort to identify "direct" evidence of gender discrimination fails on similar grounds. As noted earlier, a plaintiff who produces direct evidence of discrimination need not

In any event, even if Plaintiff could establish a *prima facie* case, Defendant has met its burden of articulating a legitimate non-discriminatory reason for Plaintiff's discharge — namely, her repeated violations of the company's attendance policy — and Plaintiff has not raised a triable issue of fact as to whether this proffered reason is "a pretext for unlawful discrimination." *Hazle,* 628 N.W.2d at 522 (internal quotation marks, alteration, and citation omitted). Nearly all of Plaintiff's discussion of pretext in her response to Defendant's motion is focused upon the words and actions of Rick Phelps during the brief period where he was Plaintiff's supervisor, as well as her complaints to management about Phelps and management's failure to take appropriate action. (*See* Plaintiff's Response Br. at 10-13.) As discussed, there is no evidence that the events of this period or the reprimand issued by Phelps contributed in any way to Defendant's discharge decision made eight months later. Nor does Plaintiff dispute the factual basis

---

establish a *prima facie* case under the *McDonnell Douglas* burden-shifting approach. *See Sniecinski v. Blue Cross & Blue Shield,* 469 Mich. 124, 666 N.W.2d 186, 192-93 (2003). In this case, Plaintiff cites the derogatory gender-based remarks of Rick Phelps as direct evidence of discrimination.

The Michigan Supreme Court has defined "direct evidence" as "evidence which, if believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions." *Hazle v. Ford Motor Co.,* 464 Mich. 456, 628 N.W.2d 515, 520 (2001) (internal quotation marks and citations omitted). In this case, while Phelps's remarks perhaps provide a window into his motivation for issuing the September 23, 2002 reprimand, the Court has already noted the lack of evidence that this reprimand played a role in Defendant's decision (eight months later) to terminate Plaintiff's employment. Likewise, there is no evidence that Phelps himself was involved in the decision-making process that led to Plaintiff's discharge, and he had long since ceased being Plaintiff's supervisor by that time. Consequently, because Phelps was not a "decision maker" at the relevant time and his remarks were "unrelated to the employment decision at issue" — namely, Plaintiff's discharge — his purported gender-based statements do not qualify as "direct evidence" of discrimination. *See Millner v. DTE Energy Co.,* 285 F. Supp.2d 950, 965-66 (E.D. Mich. 2003).

14

upon which this decision was made — *i.e.,* her repeated violations of the company's attendance policy through excessive tardiness and absences. Finally, Plaintiff has failed to produce evidence suggesting that such violations could not or ordinarily would not result in dismissal — to the contrary, the record shows that a male co-worker was discharged at around the same time for comparable violations. It follows that Plaintiff cannot show that Defendant's stated reason for her discharge was a pretext for unlawful gender discrimination.[17]

**C.     Plaintiff Has Failed to Establish a *Prima Facie* Case of Retaliation, Nor Has She Produced Evidence that Defendant's Stated Basis for Her Discharge Was a Pretext for Retaliation.**

In count III of her complaint, Plaintiff asserts that Defendant retaliated against her in violation of the Elliott-Larsen Act, Mich. Comp. Laws § 37.2701, by discharging her following her "complain[t] to her supervisor about the sexual harassment she was receiving from a co-worker." (Complaint at ¶ 16.) Defendant now seeks summary

---

[17]In one final effort to avoid an award of summary judgment in Defendant's favor on this claim, Plaintiff suggests that she should be allowed to proceed under a "mixed motive" analysis. In support of this argument, Plaintiff cites the Supreme Court's ruling in *Desert Palace, Inc. v. Costa,* 539 U.S. 90, 123 S. Ct. 2148 (2003), that a plaintiff may pursue a "mixed motive" theory using either direct or circumstantial evidence of discrimination. Yet, as this Court has previously explained, the Michigan courts have continued, even in the wake of *Costa,* to "require that mixed motive cases under the Elliott-Larsen Civil Rights Act be established by direct evidence." *Millner,* 285 F. Supp.2d at 967-68 n.19 (citing *Sniecinski,* 666 N.W.2d at 192-93). Because Plaintiff lacks direct evidence of discrimination, she cannot pursue a "mixed motive" theory. In any event, Plaintiff's argument in support of this theory rests upon a premise that lacks support in the record — namely, that "[i]t is undisputed that the September 23, 2002 discipline was a factor in the decision to terminate [Plaintiff]." (Plaintiff's Response Br. at 14.) As explained, not only is this premise not "undisputed," but there is, in fact, no evidence in the record to support this assertion.

judgment in its favor on this claim, arguing (i) that Plaintiff has failed to establish a *prima facie* case of retaliation, and (ii) that, in any event, she cannot show that Defendant's stated reason for her discharge was a pretext for retaliation. The Court again agrees on both scores.

In order to establish a *prima facie* case of retaliation under the Elliott-Larsen Act, Plaintiff must show (i) that she opposed a violation of this Act, and (ii) that this opposition was a "significant factor" in the challenged adverse employment action. *See Schemansky v. California Pizza Kitchen, Inc.,* 122 F. Supp.2d 761, 780 (E.D. Mich. 2000). This Court has emphasized that the "significant factor" standard "requires a showing of more than a 'causal link,'" because "[a] factor can be a 'cause' without being 'significant'" and "[o]nly the latter is sufficient to show retaliatory discharge." *Schemansky,* 122 F. Supp.2d at 780 (internal quotation marks and citation omitted).

As the requisite oppositional activity that establishes the first element of this *prima facie* case, Plaintiff's complaint cites her February 1, 2003 statement to her supervisor, Tamara Shird, that a co-worker had sexually harassed her.[18] Yet, as Defendant points out, there is no evidence that this complaint to Shird played any role in Defendant's decision, over three months later, to terminate Plaintiff's employment. Rather, Geers testified that Plaintiff's discharge was based solely upon her attendance problems, (*see* Geers Dep. at

---

[18]As noted earlier, while Plaintiff asserted in her interrogatory answers that this February 1, 2003 complaint was made to both Shird and store manager Jim Geers, she acknowledged at her deposition that this particular protest against co-worker sexual harassment was made only to Shird, and not Geers.

16

23), and the notice of termination likewise cites this as the basis for Defendant's decision, (*see* Defendant's Motion, Ex. 11). As explained earlier, nothing in the record casts doubt on this explanation, much less suggests that Plaintiff's complaint to Shird was a "significant factor" in Defendant's discharge decision. Moreover, the passage of a significant amount of time between Plaintiff's February 1, 2003 complaint to her supervisor and her termination on May 20, 2003 defeats any attempt to infer a causal connection from temporal proximity alone. *Compare Moore v. Kuka Welding Systems,* 171 F.3d 1073, 1080 (6th Cir. 1999) (explaining that such an inference may arise from adverse action "taken shortly after" the plaintiff engaged in protected activity).[19] Accordingly, Plaintiff has not established this element of a *prima facie* case of retaliation.

In apparent recognition of this, Plaintiff's response brief makes no mention of her February 1, 2003 complaint to Shird as a candidate for "protected activity" that could support her claim of retaliation. Instead, Plaintiff rests her argument solely upon her purported complaint to an unidentified district manager, just a few days before her discharge, that "there definitely was a problem in the store as far as discrimination." (Plaintiff's Dep. at 38-39.) In Plaintiff's view, the close temporal proximity between this complaint and her discharge establishes a *prima facie* case of retaliation.

Beyond the fact that Plaintiff did not identify this instance of protected activity in

---

[19]Defendant also points out that the initial written reprimand of Plaintiff for violating the company's attendance policy was issued on October 22, 2002, well **before** Plaintiff made her complaint to Shird about co-worker harassment.

her complaint, but instead raises it for the first time in her response to Defendant's summary judgment motion, *see Jocham v. Tuscola County,* 239 F. Supp.2d 714, 732 (E.D. Mich. 2003) (expressing the court's disapproval of the plaintiffs' attempt in that case to "amend their complaint through a response brief"), Plaintiff also has failed to produce evidence that this activity was a "significant factor" in Defendant's decision to terminate her employment. In particular, Plaintiff does not even attempt to show that the relevant decision maker, store manager Jim Geers, was aware of her complaint to the district manager. Absent such awareness, Geers plainly could not have retaliated against this protected activity, and no degree of temporal proximity could support a reasonable inference to the contrary.

Even if Plaintiff could establish a *prima facie* case of retaliation, Defendant has articulated a legitimate non-retaliatory reason for its decision to terminate Plaintiff's employment and, as the Court previously has observed, Plaintiff has produced no evidence that this stated reason was pretextual. In contending otherwise, Plaintiff notes that she was issued a written reprimand for attendance problems on October 22, 2002, and that, despite this final notice and warning that any further violations could result in her termination, (*see* Defendant's Motion, Ex. 7), the company took no action while she accrued numerous additional violations in February through mid-May of 2003. Yet, this inaction is explained in part by the undisputed record that Plaintiff's attendance problems abated for a few months following the October 22, 2002 reprimand, only to return in the final months of her employment. Moreover, there was a similar period of inaction

18

between Defendant's initial written reprimand of Plaintiff's co-worker, Rob Silas, for his attendance problems (in July of 2002) and the company's discharge of this individual for continued attendance problems (in January of 2003). (*See* Defendant's Motion, Ex. 14.) This record does not cast doubt upon Defendant's stated reason for Plaintiff's discharge but, to the contrary, tends to support it. Under this record, Plaintiff cannot establish that this stated reason was a pretext for unlawful retaliation.

### IV.  CONCLUSION

For the reasons set forth above,

NOW, THEREFORE, IT IS HEREBY ORDERED that Defendant's motion for summary judgment (docket #18) is GRANTED.

s/Gerald E. Rosen<br>
Chief Judge, United States District Court

Dated:  March 19, 2009

I hereby certify that a copy of the foregoing document was served upon counsel of record on March 19, 2009, by electronic and/or ordinary mail.

s/LaShawn R. Saulsberry<br>
Case Manager